**In re GEOTEK COMMUNICATIONS, INC., et al., Debtors.**

**Wilmington Trust Company, as Trustee of the Geotek Liquidating Trust as of March 10, 2000 Pursuant to the Second Amended Consolidated Plan of Reorganization of Debtors, Plaintiff,**

v.

**George Calhoun, Defendant.**

Bankruptcy No. 98–1375(PJW).

Adversary No. 00–689.

United States Bankruptcy Court, D. Delaware.

July 30, 2002.

Christopher P. Simon, The Bayard Firm, Wilmington, DE, for George Calhoun.

Daniel J. DeFranceschi, John H. Knight, Richards, Layton & Finger, P.A., Wilmington, DE, Lawrence G. McMichael, Peter C. Hughes, Dilworth Paxson LLP, Philadelphia, PA, Co–Counsel for Wilmington Trust Company as Trustee of the Geotek Liquidating Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This is with respect to the motion (Doc. # 16) of George Calhoun ("Defendant") for a judgment on the pleadings. I will grant the motion for the reasons discussed below.

## BACKGROUND

Geotek Communications, Inc. ("Geotek") and certain of its affiliates (collectively, "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on June 29, 1998 ("Petition Date"). On August 27, 1999, Debtors' Second Amended Consolidated Plan of Liquidation ("Plan") was confirmed. (*See* Order (Doc. # 830, Case. No. 98–1375) ("Confirmation Order")).

Pursuant to the terms of the Plan and the Confirmation Order, all of Debtors' Causes of Action, including, but not limited to certain Avoidance Actions, were assigned to Wilmington Trust Company, as Trustee of the Geotek Liquidating Trust

("Plaintiff").[1] (Pl.'s Mem. (Doc. # 20) at 2.) This assignment took place pursuant to a modification to § 4.14 of the Plan ("Modification"), included in the Confirmation Order, which provides:

> In the event a Phase II Termination Event or a Nextel Termination Event shall have occurred, *except as otherwise provided in the Plan, including, but not limited to Section 11.3 of the Plan, or the Confirmation Order,* or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan or the Chapter 11 Cases, all Causes of Action, including, but not limited to, the Avoidance Actions, if any, shall be transferred and assigned to the Liquidating Trust in accordance with Section 4.17.B.1 or Section 4.17.C.1, as the case may be, of the Plan.

(Confirmation Order, Ex. A at 3) (emphasis added).[2] Relevant to the instant dispute, § 11.3 of the Plan ("§ 11.3") provides:

> *As of the Effective Date, each of the Released Parties shall be deemed to have mutually released, to the extent permitted by the Bankruptcy Court each of the (a) Debtors, their officers, directors and employees as of the Filing date, agents, advisors and representatives,* (b) the M–L Funds, (c) the 15% Secured Notes Indenture Trustee, (d) HNS, (e) S–C Rig, (f) the Unsecured 12% Notes Indenture Trustee, (g) the Creditors' Committee (but not any member thereof in its capacity as a Holder of a Claim), and (h) each Consenting Holder and, with respect to the Persons listed in clauses (b) through (h), the respective present and former directors, officers, partners (general and limited), shareholders (record and beneficial), employees, agents, advisors, and representatives of all the foregoing, *of and from any and all Claims, obligations, rights, Causes of Action, the Released Avoidance Actions and liabilities* (other than the right to enforce the obligations of any party under the Plan) which such Person may be entitled to assert, whether known or unknown, foreseen or unforeseen, then existing or thereafter arising, based in whole or in part upon any act, omission or other occurrence taking place from the beginning of time to and including the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, including, but not limited to, the 85/15 Proposal, or the Plan.

(Plan § 11.3) (emphasis added). Pursuant to § 1.186 of the Plan ("§ 1.186"), the "Released Parties" are defined as:

1. Pursuant to the terms of the Plan, "Causes of Action" are defined as "all actions, causes of action, liabilities, suits, debts, indebtedness (for borrowed money or in the nature of a guarantee), dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, trespasses, damages, rights, executions, claims, Claims, objections to Claims, judgments and demands whatsoever, whether known or unknown, choate or inchoate, suspected or unsuspected, in law, equity or otherwise." (Plan § 1.35.) "Avoidance Actions" are defined as "all Causes of Action arising under sections 510(c), 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code." (*Id.* at § 1.25.)

2. Prior to the Modification, which does not alter, but constitutes an addition to the language provided below, § 4.14 provided:

> Except as otherwise provided in the Plan, including, but not limited to Section 11.3 of the Plan, or the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, Reorganized Geotek will retain and may enforce all Causes of Action, including the Avoidance Actions.

(Plan § 4.14, prior to the Modification.) Section 4.14 of the Plan was subsequently modified to include additional provisions. (*See* Confirmation Order, Ex. B at 9–10.)

[C]ollectively, (i) the Debtors, their officers, directors and employees as of the Filing Date, and their agents, advisors and representatives, and (ii) each Consenting Holder, the Creditors' Committee, HNS, S–C Rig, WTC, the M–L Funds, the Unsecured 12% Notes Indenture Trustee and each of their respective present and former officers, directors, partners (general and limited), shareholders (record and beneficial), employees, agents, advisors, attorneys, and representatives.

(*Id.* at § 1.186.)

Prior and subsequent to the Petition Date, Defendant was employed as an officer and as a member of the Board of Directors of at least one of the Debtors. (Def.'s Mot. (Doc. # 16) ¶ 4.) On or about June 29, 2000, Plaintiff commenced the instant adversary proceeding against Defendant seeking to recover $182,129.00 allegedly due in connection with the execution of two promissory notes and the transfer of other funds to Defendant by Debtors pre-petition. (*Id.* at ¶ 2.)[3] Subsequently, on or about May 11, 2001, Defendant filed his motion (Doc. # 16) for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) ("Rule 12(c)")[4].

Defendant argues that he is entitled to judgment as a matter of law because, as a former officer and director of Debtors, he is a "Released Party" under § 1.186 who has been broadly released from any and all Causes of Action "in any way relating to the Debtors" pursuant to the plain language of § 11.3. (*Id.* at ¶¶ 10–12.) Defendant argues that because Plaintiff succeeded to Debtors' rights, title and interests in all of Debtors' claims and Causes of Action subject to the release provisions of § 11.3,

Plaintiff has no right to enforce the instant cause of action against him. (*Id.*) In response to these arguments, Plaintiff disputes that Defendant has been released with respect to claims and Causes of Action held by Geotek and argues that while § 11.3 operates to release Geotek's claims against the other Debtors and their respective officers, directors and employees, it does not operate to release Geotek's claims against its own officers, directors and employees, including Defendant. (Pl.'s Mem. (Doc. # 20) at 2–3.)

## DISCUSSION

On October 30, 2001, upon reviewing the initial arguments made by the parties in support of their respective interpretations of § 11.3, I informed counsel that, in my opinion, a threshold issue raised by the language in § 11.3 is that which conditions the releases "to the extent permitted by the Bankruptcy Court". Having found that this language provided no clear understanding as to how the parties intended the releases to take effect, and that one could interpret such language to suggest a need for the Court to make a determination of the appropriateness of each and every release accompanied in the provision, I asked counsel to file supplemental written submissions as to the purpose and effect of such language. They have since done so and I am now convinced that the language "to the extent permitted by the Bankruptcy Court" was not intended to require the Court to make a determination of the appropriateness of each and every release accompanied in the provision. (Confirmation Order at 13.) Upon reading § 11.3 in context with paragraph C.C. of

---

**3.** Plaintiff filed an amended complaint ("Amended Complaint") on November 9, 2000, and Defendant answered on or about December 13, 2000.

**4.** Fed.R.Civ.P. 12(c) is applicable in this proceeding pursuant to Fed. R. Bankr.P. 7012.

the Confirmation Order[5], I find that § 11.3 can be viewed as setting forth the mechanics of the releases, while leaving it to the Court to decide whether to permit them or not, and paragraph C.C. of the Confirmation Order can be viewed as the Court agreeing that the releases, as articulated in § 11.3, are permissible in the context of the Bankruptcy Code. In other words, the language "to the extent permitted by the Bankruptcy Court" can effectively be read as proposing that the releases provided for in § 11.3 are subject to the Court's approval, which approval was granted pursuant to paragraph C.C. of the Confirmation Order. In light of this interpretation, I am satisfied that § 11.3 sets forth the full extent to which releases are to be permitted under the terms of the Plan, and that the Court's approval of such releases, having previously been granted pursuant to the terms of the Confirmation Order, is not now required on an additional case-by-case basis. In light thereof, I further find that pursuant to § 11.3, Defendant has been released from any and all claims and/or Causes of Action which Debtors may be entitled to assert against him and therefore, the instant proceeding must be dismissed pursuant to Rule 12(c).

In reviewing a motion for a judgment on the pleadings under Rule 12(c), the Court applies the same standard to be applied to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The Court must accept as true all allegations contained in the complaint and construe all reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir.1980). Applying this standard to the instant matter, I find that the Amended Complaint must be dismissed as a matter of law. The Plaintiff's alleged interest in the instant cause of action against Defendant stems from the fact that "Debtors assigned to the Trust all of the Debtors' right, title and interest in and to all claims and causes of action arising under the Bankruptcy Code or arising under state law." (Am.Compl. ¶ 5.) However, as discussed below, at the time this alleged assignment took place, Debtors' had no right, title or interest in any such claim or cause of action against Defendant because all of Debtors' claims and/or causes of action against Defendant were released on the effective date of the Plan pursuant to § 11.3.

Although Plaintiff argues that § 11.3 should be interpreted as releasing all claims between Debtor entities, but not as releasing claims between a Debtor entity and its own officers, directors and employees, I find that such an interpretation conflicts with the plain language of the provision. Section 11.3 expressly and

5. Paragraph C.C. of the Confirmation Order provides:

The releases set forth in Section 11.3 of the Plan constitute good faith compromises and settlements of the matters covered thereby. Such releases are made in exchange for consideration and are in the best interests of Holders of Claims, are fair, equitable, reasonable and are integral elements of the compromises by various creditor constituencies which form the foundation of the Plan. Each of the releases:

1. falls within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334;
2. is an essential means of implementing the Plan pursuant to § 1123(a)(5) of the Bankruptcy Code;
3. is an integral element of the transactions incorporated into the Plan;
4. is voluntarily given by each of the Persons granting such release; and
5. is consistent with Sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

(Confirmation Order at 13.)

unambiguously provides that each of the Released Parties, defined in § 1.186 as including "the Debtors their officers, directors and employees as of the Filing Date, and their agents, advisors and representatives" (Plan § 1.186), "shall be deemed to have *mutually released*, to the extent permitted by the Bankruptcy Court each of the (a) Debtors, their officers, directors and employees as of the Filing date, agents, advisors and representatives ... of and from any and all Claims, obligations, rights, Causes of Action, the Released Avoidance Actions and liabilities". (Plan § 11.3.) This language clearly encompasses the release of any and all Causes of Action held by Geotek against Defendant. If, as Plaintiff contends, the parties had intended the releases provided for in § 11.3 to apply except to the extent that a Debtor entity holds a claim, right or Cause of Action against one of its own officers, directors or employees, they could have easily so provided. The fact that they did not indicates their intent that § 11.3 be interpreted in accordance with its plain language so that each Released Party, including Defendant, is deemed to have been released from any and all claims or causes of action by all other Released Parties, including Geotek.[6]

## CONCLUSION

For the reasons discussed above, Defendant's motion (Doc. # 16) for a judgment on the pleadings is granted.

---

6. Given that the language of §§ 1.186 and 11.3 are clear and unambiguous, there is no need, despite Plaintiff's contention to the contrary, to look to the controversy being settled and the purpose for which the release was executed in determining the scope of the release. In addition, I find the hypothetical submitted by Plaintiff in support of its argument that Defendant's interpretation of § 11.3 could lead to incongruous results to be unpersuasive. (*See* Pl.'s Mem. (Doc. # 20) at 3–4.)